1
2
3
4
5
6
7
8
9
10
11
12

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                        )
                                        )   No. C11-1423RSL
                                        )
In re L&L ENERGY, INC.                  )
SECURITIES LITIGATION                   )   ORDER GRANTING DEFENDANTS'
                                        )   MOTION TO DISMISS
                                        )
                                        )
_____)

13    This matter comes before the Court on "Certain Defendants' Motion to Dismiss

14  Second Amended Class Action Complaint."  Dkt. # 37.[1]  Defendants argue that plaintiff's

15  allegations of falsity, scienter, and loss causation do not satisfy the pleading standards of the

16  Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 78u-4 and 78u-5,

17  and Fed. R. Civ. P. 9(b).  Having reviewed the Second Amended Complaint ("SAC") and the

18  memoranda submitted by the parties,[2] and having heard the arguments of counsel, the Court

19  finds as follows:

20

21
        [1] Defendant Jung Mei Wang has not appeared in this action or joined in the motion.
22  Nevertheless, the analysis regarding the adequacy of plaintiff's allegations applies equally to her.

23
        [2] Defendants' requests for judicial notice (Dkt. # 40 and Dkt. # 59) are DENIED except as
24  specifically noted in the text.  Although the Court may, in certain circumstances, consider extrinsic
    evidence in the context of a motion to dismiss, the Court is not prepared to resolve the various
25  challenges to authenticity that have arisen or to accept the truth of statements made in publicly-filed
    documents.
26
ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS

1  **THE SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2      Plaintiff filed this litigation on behalf of all persons who purchased the common

3  stock of L&L Energy between August 13, 2009, and August 2, 2011.  L&L Energy is a U.S.

4  company engaged in coal mining and related operations in China through a number of

5  subsidiaries.  Second Amended Complaint ("SAC") ¶ 2.  Plaintiff alleges that L&L Energy and

6  certain officers and/or directors intentionally misled the investing public by overstating the

7  company's consolidated revenues and falsely claiming ownership of certain mining interests.

8  Plaintiff further alleges that when these falsehoods were disclosed on August 2, 2011, L&L

9  Energy's stock price fell by 17.3%, causing plaintiff damage.

10     Plaintiff specifically alleges that defendants misled the public in the following

11  ways:

12  (1) Defendants falsely reported in the 2009 10-K filed with the Securities Exchange

13      Commission ("SEC") that L&L Energy earned consolidated net revenue of $40.9
        million and net income of $9.9 million for the fiscal year ending April 30, 2009

14      (SAC ¶ 52);

15  (2) Defendants falsely reported in the 2010 10-K filed with the SEC that L&L Energy

16      earned consolidated net revenue of $109.2 million and net income of $32.9 million
        for the fiscal year ending April 30, 2010 (SAC ¶ 86);

17

18  (3) Defendants falsely reported in the 2010 10-K that L&L Energy owned the Ping Yi
        Coal Mine (SAC ¶ 87) and included $22,679,872 in revenue derived from that

19      mine in their consolidated financial statements (SAC ¶ 97);

20  (4) Defendants falsely reported in the 2010 10-K that L&L Energy owned the Zone Lin

21      Coal Coking Company (SAC ¶ 101) and included revenue derived from that
        operation in their consolidated financial statements (SAC ¶ 108);

22

23  (5)  Defendants falsely reported in the 2011 10-K filed with the SEC that L&L Energy

24      earned consolidated net revenue of $223.85 million and net income of $36.78
        million for the fiscal year ending April 30, 2011 (SAC ¶ 111);

25

26

(6)  Defendants falsely reported in the 2011 10-K that L&L Energy owned and earned revenue from the Ping Yi Coal Mine and the Zone Lin Coal Coking Company (SAC ¶ 116 and ¶ 118); and

(7)  Defendants falsely reported in the 2011 10-K that L&L Energy earned revenue of $22.1 million from Zone Lin Coal Coking Company for the eight month period between May 2010 to January 31, 2011 (SAC ¶ 119).[3]

The complaint alleges that defendants made these representations with knowledge that they were false at the time they were made.  Plaintiff's allegation of scienter is based on the individual defendants' positions within L&L Energy and the facts that two of the individual defendants "profited handsomely" from the disposition of stock during the class period (SAC ¶ 122), L&L Energy's Chief Executive Officer had been accused of security law violations in the past (SAC ¶ 125), defendants made a habit of falsely claiming ownership of mining interests (SAC ¶ 126 and ¶ 131), three directors resigned within five months of the disclosure of the true state of affairs on August 2, 2011 (SAC ¶¶ 132-134), and L&L Energy has had five Chief Financial Officers between March 2008 and the present (SAC ¶ 135).

### PRIVATE SECURITIES LITIGATION REFORM ACT ("PSLRA")

In 1995, Congress raised the pleading requirements in private securities litigation in order to deter the routine filing of shareholder lawsuits whenever a significant change in a company's stock price occurred.  Congress was particularly concerned with litigation based on nothing more than (1) speculation that the company "must have" engaged in foul play and (2) the faint hope that the liberal rules of discovery would turn up some supporting evidence.  See Joint Explanatory Statement to the PSLRA, H.R. CONF. REP. NO. 104-369 (1995), reprinted in 1995 U.S.C.C.N. 730.  In order to state a claim under § 10b of the Exchange Act and Rule 10b-5 plaintiffs "must allege:  (1) a material misrepresentation (or omission), (2) made with scienter,

---

[3]  Plaintiff alleges that L&L Energy's interim quarterly reports to the SEC were materially false and misleading for the same reasons (SAC ¶ 120).

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS                    -3-

1   (3) on which plaintiff relied, (4) that proximately caused (5) economic loss, (6) in connection

2   with the purchase or sale of a security."  Reese v. BP Exploration (Alaska) Inc., 643 F.3d 681,

3   685 (9th Cir. 2011).  Private securities plaintiffs must "specify each statement alleged to have

4   been misleading, the reason or reasons why the statement is misleading, and, if an allegation

5   regarding the statement or omission is made on information and belief, the complaint shall state

6   with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1).  In order to

7   withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the complaint must, as to each act

8   or omission alleged to violate the securities laws, "state with particularity facts giving rise to a

9   strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-

10  4(b)(2).  Thus, private securities plaintiffs must "plead with particularity both falsity and

11  scienter."  Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 990 (9th Cir. 2009).

12          In order to satisfy the scienter requirement, plaintiff must allege that defendants

13  engaged in knowing or intentional conduct.  In re Silicon Graphics Inc. Securities Litig., 183

14  F.3d 970, 975 (9th Cir. 1999).  The Ninth Circuit has held that "reckless conduct can also meet

15  this standard 'to the extent that it reflects some degree of intentional or conscious misconduct,'"

16  otherwise known as "deliberate recklessness."  South Ferry LP, # 2 v. Killinger, 542 F.3d 776,

17  782 (9th Cir. 2008) (quoting In re Silicon Graphics, 183 F.3d at 975-977).  Simply alleging that

18  statements were knowingly false or that defendants were deliberately reckless is not enough,

19  however.  Such allegations must be supported with references to specific facts, events,

20  documents, and/or reports.  In order to determine whether the complaint gives rise to a strong

21  inference of intentional or deliberately reckless conduct, the allegations must raise an inference

22  that is "more than merely 'reasonable' or 'permissible' - it must be cogent and compelling, thus

23  strong in light of other explanations.  A complaint will survive . . . only if a reasonable person

24  would deem the inference of scienter cogent and at least as compelling as any opposing

25  inference one could draw from the facts alleged."  Tellabs, Inc. v. Makor Issues and Rights, Ltd.,

26

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS                    -4-

551 U.S. 308, 324 (2007).  When determining the strength of the scienter allegations, each allegation, even if not compelling in and of itself, must be considered as part of the larger whole. Tellabs, 551 U.S. at 326.

In order to have a claim under the PSLRA, plaintiff must also allege a causal connection between defendants' material misrepresentations or omissions and plaintiff's loss. Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 342 (2005).  Although no special pleading standard applies, the allegations of the complaint must give rise to an inference that, once the truth became known, the value of plaintiff's shares dropped significantly.  Metzler Inv. GMBH v. Corinthian Colleges, Inc., 540 F.3d 1049, 1062 (9th Cir. 2008).  Plaintiff need not show that the misrepresentation was the sole reason for a drop in share price, just that it was a reason for the loss.  In re Daou Sys., Inc., 411 F.3d 1006, 1014 (9th Cir. 2005).

### APPLICATION OF PSLRA TO PLAINTIFF'S ALLEGATIONS

Plaintiff has identified seven false or misleading statements as set forth above. Plaintiff has not, however, linked most of these statements to a drop in share price, either because there was no corrective disclosure or because there was no significant drop in share price following a disclosure.  The only two statements for which loss causation has been alleged are the statements regarding L&L Energy's revenue and income for the fiscal year ending April 30, 2009, and the ownership of the Zone Lin Coal Coking Company.[4]  The Court will therefore determine the adequacy of plaintiff's falsity and scienter allegations only as to those two

---

[4]  At oral argument, plaintiff's counsel argued that the report issued by Glaucus Research Group on August 2, 2011, also disclosed the falsity of statements made to the SEC regarding L&L Energy's revenue and income for fiscal years 2010 and 2011, creating a causal link between those representations and the subsequent drop in stock prices.  The Court has therefore taken judicial notice of the Glaucus report, not for the truth of the matter asserted therein, but to determine the extent of the corrective disclosure to the market.  Having reviewed the report, it is clear that Glaucus Research Group compared only "publicly available SAIC filings for the calendar year 2009" to the SEC filings for a comparable time period.  Dkt. # 40-2 at 12.

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS                        -5-

1   statements.

2   **A. REVENUE AND INCOME STATEMENTS IN 2009 10-K**

3       **1. Falsity**

4           Plaintiff alleges that defendants grossly overstated L&L Energy's consolidated net

5   revenue and net income in its SEC filings for the fiscal year May 1, 2008, to April 30, 2009.

6   This allegation is based primarily on the fact that L&L Energy's subsidiaries in China reported

7   much lower revenues and income to the PRC State Administration for Industry and Commerce

8   ("SAIC") over a comparable period.  SAC ¶¶ 53-61.[5]  Plaintiff alleges that the SAIC and SEC

9   numbers should approximate each other because Chinese law required two of L&L Energy's

10  subsidiaries, Kunming Biaoyu Industrial Boiler Ltd. ("KMC") and L&L Yunhan Tianneng

11  Industry Ltd. ("TNI") to file audited financial reports with the SAIC and the generally accepted

12  accounting principles of China and the United States are substantially similar.  SAC ¶¶ 68-73.

13  Plaintiff further alleges that the financial statements provided to the SAIC reflect L&L Energy's

14  true financial performance while the statements made to the SEC are false.  This allegation is

15  based on the fact that there are strict penalties, including the revocation of an entity's business

16  license, for filing false statements with the SAIC.  SAC ¶ 63-66.

17          Plaintiff did not attach any of the SAIC or SEC filings to his complaint, making it

18  virtually impossible to determine whether the comparisons he draws are apples-to-apples.  What

19  information defendants were asked to provide in each regulatory setting and the sources of that

20  information cannot be ascertained directly.  Plaintiff's description of the SAIC data suggests,

21  however, that it differed in material ways from the information provided to the SEC, and not just

22  in amounts.  First, the reporting periods varied.  While plaintiff analyzes the reported data in two

23  ways in an attempt to mitigate any error caused by the variance, the comparisons are weaker

24  _____

25      [5] According to plaintiff's calculations, L&L Energy reported approximately three times more

26  revenue and four times more income to the SEC than to the SAIC.

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS                    -6-

because of the discrepancy.  SAC ¶¶ 54-60.  Second, when compiling the SAIC data, plaintiff

opted to include related-company transactions even though those transactions were specifically

excluded from the SEC numbers.  SAC ¶ 60-61.  Third, the revenue streams used to calculate the

consolidated statements vary.  The SEC numbers were calculated based on 100% of the revenue

from KMC and 60% of the revenue from L&L Coal Partners.  When calculating the revenue

reported to the SAIC, however, plaintiff consolidated 100% of the revenues from KMC, 100%

of the revenue of one of KMC's subsidiaries, and 100% of the revenues of the two mines owned

by L&L Coal Partners.  SAC ¶ 61.  No explanation is provided.  Finally, of the four income

streams plaintiff used to calculate the SAIC revenues, only one of those entities was subject to

an auditing requirement.  SAC ¶ 68.  Plaintiff has not alleged that the SAIC filings of the other

three entities (or of the majority of L&L Energy's thirteen Chinese subsidiaries) were audited or

otherwise conformed to the accounting principles that govern the SEC filings.  Based on the

allegations of the complaint, one might draw the inference that the amounts reported to the SAIC

and the SEC are inconsistent, but because the inputs and consolidation methods varied in

material respects, the inference is not particularly strong.

        Even if one were to assume, based on nothing more than the magnitude of the

differences between the numbers, that one of the filings must be incorrect, plaintiff has failed to

support his conclusory assertion that "[t]he financial statements filed with the SAIC indicate

L&L's true financial performance and the SEC financial statements overstate revenue and

income."  SAC ¶ 62.  This allegation is based solely on the assertion that there are penalties for

filing false statements with the SAIC, including fines and the revocation of an entity's business

license.  SAC ¶ 63-66.  Although conspicuously absent from the Second Amended Complaint,

the Court need not turn a blind eye toward the corresponding provisions of United States law

when evaluating the strength of the inference of falsity.  Wilful misstatements in an SEC filing

may result in the temporary suspension of trading in the company's securities, injunctive relief,

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS                    -7-

civil penalties, imprisonment for up to twenty years, and/or criminal fines up to $5,000,000 for individuals or $25,000,000 for corporations.  15 U.S.C. § 78l, § 78u(d), and § 78ff(a).  The only reasonable inference is that corporations make false statements to both the SAIC and the SEC at their peril.  Individual actors apparently face far more significant penalties for false filings in the United States.  The bare allegations supporting plaintiff's assertion that the SEC numbers, rather than the SAIC numbers, are fabrications fail to raise the necessary strong inference of falsity.

### 2. Scienter

For purposes of the scienter analysis, the Court will assume that the 2009 10-K misrepresented L&L Energy's consolidated revenue and income streams.  Plaintiff alleges that defendants knew or, based on the magnitude of the discrepancies, must have known at the time they were made that the revenue and income statements in the 2009 10-K were false.  Plaintiff's scienter allegations are based on a "must have known" theory, a profit motive on the part of defendants Dickson Lee and Robert Lee, Dickson Lee's blemished history with state and administrative bodies related to the offering of securities, and a rash of resignations before and after the disclosure of the truth on August 2, 2011.[6]  The question is whether, after considering all of these allegations holistically, plaintiff has raised a strong inference that one or more of the named defendants acted knowingly, intentionally, or with such recklessness that it reflects some degree of intentional or conscious misconduct.

Plaintiff's scienter allegations are extremely general.  Other than the allegations regarding stock sales and problems with prior offerings, none of the allegations is tied to a particular individual.  It is not clear what Jung Mei Wang, Ian G. Robinson, Shirley Kiang, Dennis Bracy, and Robert Okun are supposed to have known at any particular time:  the

---

[6] Plaintiff's allegations regarding false claims of ownership of various mining interests are not relevant to the 2009 revenue and income statements.  L&L Energy first claimed ownership of the Zone Line Coal Coking Company, Ping Yi Coal Mine, and Hon Shen Coal Company in its 2010 10-K.

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS                    -8-

complaint simply alleges that they were officers, directors, and/or members of L&L Energy's audit committee.  Plaintiff does not allege or point to evidence suggesting that any of the defendants was involved in compiling (or was even aware of ) the information that was presented to the SAIC.  Nor is there any reason to assume that they were aware that different regulatory filings in different countries for different time period and different entities were supposed to match.

Even if one overlooks the general nature of the scienter allegations, the allegations regarding stock sales, prior securities issues, "false" claims of ownership, and resignations are equivocal as far as defendants' state of mind is concerned.  There is no context in which to evaluate either the stock sales or the prior regulatory problems.  On their face, the numbers and reported violations are not significant enough to raise an inference that defendants intentionally misrepresented revenues to the SEC in 2009.[7]  With regards to the resignations, plaintiff does not attempt to explain how separations occurring both before and after the alleged misrepresentations and corrective disclosure (from March 2008 to the present) give rise to an inference of scienter.  The implication urged by plaintiff seems to be that directors and Chief Financial Officers resigned when they discovered malfeasance on the part of the corporation, but such an inference is not reasonable with regards to resignations occurring before the malfeasance took place.  In addition, if the three directors, including two of the named defendants here, resigned upon discovering the truth (SAC ¶¶ 132-134), that would necessarily mean that they did not know of the wrongful conduct before August 2, 2011.

Having considered all of plaintiff's allegations regarding scienter as a whole, the Court finds that, while there is some evidence from which one could argue that Dickson Lee and

---

[7]  Dickson Lee's sales of stock are outweighed by his purchases during the relevant time frame, and plaintiff's descriptions of the five regulatory actions suggest that they arose out of the same defective offering.

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS                    -9-

1   Robert Lee engaged in knowing or intentional misconduct related to the 2009 10-K filing, such

2   an inference is neither cogent nor compelling in light of other explanations.

3   **B. OWNERSHIP OF ZONE LIN COAL COKING COMPANY**

4       **1. Falsity**

5           Plaintiff alleges that L&L Energy's 2010 10-K is materially false and misleading

6   in that it claimed ownership of the Zone Lin Coal Coking Company and included its earnings in

7   its consolidated revenue and income statements.  SAC §§ 101 and 108.  Plaintiff alleges that a

8   Mr. Laozhong Yang has been the registered owner of Zone Lin throughout the relevant period,

9   that Chinese law precludes a corporate entity from owning a sole proprietorship like Zone Lin,

10   and that Mr. Yang's assistant has stated that L&L Energy's subsidiary never acquired an

11   ownership interest in Zone Lin.  For purposes of this motion, the Court will assume that L&L

12   Energy's attempted acquisition of Zone Lin was not effective.[8]

13       **2. Scienter**

14           Plaintiff alleges that defendants knew at the time they claimed ownership of Zone

15   Lin Coal Coking Company that the claim was false.  In support of this contention, plaintiff

16   points to the same factors described above, with the addition of the allegation that defendants

17   had a habit of falsely claiming ownership over mining operations.  Even with this additional

18   allegation, plaintiff has failed to raise a strong inference that defendants acted knowingly,

19   intentionally, or with such recklessness that it reflects some degree of intentional or conscious

20   misconduct.  L&L Energy, through its subsidiary TNI, contracted to purchase 100% of Zone

21   Lin, effective November 1, 2009.  Dkt. # 40, Ex. 10.  Plaintiff cites to no documents, reports, or

22   communications that suggest that this agreement was a sham when signed or that any of the

23

24         [8] A standardized and translated version of the Zone Lin acquisition agreement was filed with the
   SEC as part of L&L Energy's 10-Q for the quarter ending January 31, 2010.  Dkt. # 40, Ex. 7.  Plaintiff

25   has offered no reasonable critique of the agreement's authenticity, and the Court takes judicial notice of
   its existence.

26

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS         -10-

named defendants knew or had reason to know in 2010 that TNI's claim to ownership of Zone

Lin (or the other mining interests) would subsequently be challenged.  In fact, L&L Energy

consistently claimed ownership of Zone Lin in both China and the United States during the

relevant time frame.  The inference of scienter raised by plaintiff's allegations is simply not

strong enough to go forward under the PSLRA.[9]

## C. LEAVE TO AMEND

Federal Rule of Civil Procedure 15(a)(2) directs federal courts to "freely give leave

[to amend] when justice so requires."  The Court has discretion to deny leave to amend when the

record reveals "undue delay, bad faith or dilatory motive on the part of the movant, repeated

failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing

party by virtue of allowance of the amendment, and futility of amendment."  Zucco Partners, 552

F.3d at 1007.  Because the PSLRA is so technical and demanding, "the drafting of a cognizable

complaint can be a matter of trial and error," making it even more important to allow the filing

of successive pleadings in this context.  Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048

(9th Cir. 2003).

Plaintiff's request for leave to amend is perfunctory and provides no indication of

what additional facts he might plead if given the chance to amend.  In re Vantive Corp. Sec.

Litig., 283 F.3d 1079, 1098 (9th Cir. 2002).  No additional details regarding a proposed

amendment were provided at oral argument, making it very difficult to determine whether an

amended pleading would fare any better than the current complaint.  The record suggests that

plaintiff does not have the necessary evidence of intentional falsehood and loss causation:  he

has already had two opportunities to amend the complaint and some of the deficiencies identified

_____

[9]  Because plaintiff has not adequately pled falsity and/or scienter, the Court need not determine
whether the individual defendants could be liable for the alleged misrepresentations as a "controlling
person" under § 20(a) of the Exchange Act.

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS              -11-

1  in this order should have been apparent from the outset.  The Court is loathe to grant leave to

2  amend where the particulars of the amendment are unknown and the existing record suggests

3  futility.  On the other hand, dismissing the complaint with prejudice at this point seems

4  premature because plaintiff is only now obtaining the benefit of the Court's analysis of his

5  claims.  Plaintiff will therefore be given thirty days in which to file a motion for leave to amend

6  that is supported by a proposed amended pleading.

7  CONCLUSION

8  For all of the foregoing reasons, defendants' motion to dismiss is GRANTED and

9  the Second Amended Class Action Complaint is hereby DISMISSED.  Plaintiff may file an

10  adequately supported motion for leave to amend within thirty days of the date of this Order.

11

12  Dated this 3rd day of December, 2012.

13

14  _MRS Lasnik_
Robert S. Lasnik
United States District Judge

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS          -12-