UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                        )
In re L&L ENERGY, INC.                  )   No. C11-1423RSL
SECURITIES LITIGATION                   )
                                        )   ORDER DENYING DEFENDANTS'
                                        )   MOTION TO DISMISS
                                        )
                                        )
_____)

This matter comes before the Court on "Certain Defendants' Motion to Dismiss Third Amended Complaint." Dkt. # 81. Defendants argue that plaintiff's allegations of falsity, scienter, and loss causation do not satisfy the pleading standards of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 78u-4 and 78u-5, and Fed. R. Civ. P. 9(b). Having reviewed the Third Amended Complaint ("TAC") and the memoranda submitted by the parties,[1] the Court finds as follows:

**THE THIRD AMENDED CLASS ACTION COMPLAINT**

Plaintiff filed this litigation on behalf of all persons who purchased the common

---

[1] This matter can be decided on the papers submitted. Defendants' request for oral argument is DENIED.

Pursuant to LCR 10(e)(3), the bottom margin of each page of a pleading, motion, or other filing must contain an abbreviated title of the document and the law firm, mailing address, and telephone number of the attorney or party who prepared the submission. Plaintiff shall ensure compliance with these requirements in the future.

ORDER DENYING DEFENDANTS'
MOTION TO DISMISS

stock of L&L Energy between August 13, 2009, and August 2, 2011.  L&L Energy is a U.S. company engaged in coal mining and related operations in China through a number of subsidiaries.  TAC ¶ 2.  Plaintiff alleges that L&L Energy and certain officers and/or directors intentionally misled the investing public by falsely claiming ownership of certain mining interests and overstating the company's consolidated revenues.  Plaintiff further alleges that when these falsehoods were disclosed on August 2, 2011, L&L Energy's stock price fell by 17.3%, causing plaintiff damage.[2]

Plaintiff specifically alleges that defendants misled the public in the following ways:

(1) Defendants falsely reported in the 2009 10-K filed with the Securities Exchange Commission ("SEC") that L&L Energy earned consolidated net revenue of $40.9 million for the fiscal year ending April 30, 2009 (TAC ¶ 49);

(2) Defendants falsely reported in the 2010 10-K filed with the SEC that L&L Energy earned consolidated net revenue of $109.2 million for the fiscal year ending April 30, 2010 (TAC ¶ 157); and

(3) Defendants falsely reported in the 2011 10-K filed with the SEC that L&L Energy earned consolidated net revenue of $223.85 million and net income of $36.78 million for the fiscal year ending April 30, 2011 (TAC ¶ 246).[3]

The complaint alleges that defendants made these representations with knowledge that they were false at the time they were made.  Plaintiff's allegation of scienter is based on the individual defendants' positions within L&L Energy and their involvement in the filing and certification of

---

[2] Plaintiff suggests, without actually stating, that a July 29, 2011, amendment to L&L Energy's 2010 10-K constituted a second corrective disclosure.  Because the disclosure of inadequate entity level controls and the resulting risk of errors in financial reporting did not disclose the "truth" regarding any of the various misstatements alleged by plaintiff, the amendment cannot establish loss causation.

[3] Plaintiff alleges that L&L Energy's interim quarterly reports to the SEC were also materially false and misleading (TAC ¶ 255).

ORDER DENYING DEFENDANTS'
MOTION TO DISMISS                              -2-

the offending 10-Ks.  In addition, plaintiff alleges that defendant Dickson Lee and his brother "profited handsomely" from the disposition of stock during the class period (TAC ¶ 256), that Mr. Lee had been accused of security law violations in the past (TAC ¶ 267), that three directors resigned within five months of the disclosure of the true state of affairs on August 2, 2011 (TAC ¶¶ 268-270), and that L&L Energy has had five Chief Financial Officers between March 2008 and the present (TAC ¶ 271).

## PRIVATE SECURITIES LITIGATION REFORM ACT ("PSLRA")

In 1995, Congress raised the pleading requirements in private securities litigation in order to deter the routine filing of shareholder lawsuits whenever a significant change in a company's stock price occurred.  Congress was particularly concerned with litigation based on nothing more than (1) speculation that the company "must have" engaged in foul play and (2) the faint hope that the liberal rules of discovery would turn up some supporting evidence.  See Joint Explanatory Statement to the PSLRA, H.R. CONF. REP. NO. 104-369 (1995), *reprinted in* 1995 U.S.C.C.N. 730.  In order to state a claim under § 10b of the Exchange Act and Rule 10b-5 plaintiffs "must allege:  (1) a material misrepresentation (or omission), (2) made with scienter, (3) on which plaintiff relied, (4) that proximately caused (5) economic loss, (6) in connection with the purchase or sale of a security."  Reese v. BP Exploration (Alaska) Inc., 643 F.3d 681, 685 (9th Cir. 2011).  Private securities plaintiffs must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1).  In order to withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the complaint must, as to each act or omission alleged to violate the securities laws, "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).  Thus, private securities plaintiffs must "plead with particularity both falsity and

ORDER DENYING DEFENDANTS'
MOTION TO DISMISS                             -3-

scienter." Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 990 (9th Cir. 2009).

In order to satisfy the scienter requirement, plaintiff must allege that defendants engaged in knowing or intentional conduct. In re Silicon Graphics Inc. Securities Litig., 183 F.3d 970, 975 (9th Cir. 1999). The Ninth Circuit has held that "reckless conduct can also meet this standard 'to the extent that it reflects some degree of intentional or conscious misconduct,'" otherwise known as "deliberate recklessness." South Ferry LP, # 2 v. Killinger, 542 F.3d 776, 782 (9th Cir. 2008) (quoting In re Silicon Graphics, 183 F.3d at 975-977). Simply alleging that statements were knowingly false or that defendants were deliberately reckless is not enough, however. Such allegations must be supported with references to specific facts, events, documents, and/or reports. In order to determine whether the complaint gives rise to a strong inference of intentional or deliberately reckless conduct, the allegations must raise an inference that is "more than merely 'reasonable' or 'permissible' - it must be cogent and compelling, thus strong in light of other explanations. A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Tellabs, Inc. v. Makor Issues and Rights, Ltd., 551 U.S. 308, 324 (2007). When determining the strength of the scienter allegations, each allegation, even if not compelling in and of itself, must be considered as part of the larger whole. Tellabs, 551 U.S. at 326.

In order to have a claim under the PSLRA, plaintiff must also allege a causal connection between defendants' material misrepresentations or omissions and plaintiff's loss. Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 342 (2005). Although no special pleading standard applies, the allegations of the complaint must give rise to an inference that, once the truth became known, the value of plaintiff's shares dropped significantly. Metzler Inv. GMBH v. Corinthian Colleges, Inc., 540 F.3d 1049, 1062 (9th Cir. 2008). Plaintiff need not show that the misrepresentation was the sole reason for a drop in share price, just that it was a reason for the

ORDER DENYING DEFENDANTS'
MOTION TO DISMISS                              -4-

loss.  In re Daou Sys., Inc., 411 F.3d 1006, 1014 (9th Cir. 2005).

## APPLICATION OF PSLRA TO PLAINTIFF'S AMENDED ALLEGATIONS

In the previous iteration of his complaint, plaintiff identified the three false or misleading revenue statements set forth above as well as four additional misstatements regarding L&L Energy's ownership of the Ping Yi Coal Mine and the Zone Line Coal Coking Company during certain years.  By limiting its allegations of falsity to general statements regarding revenue, plaintiff has managed to overcome the Court's prior loss causation findings.  The report issued by Glaucus Research Group on August 2, 2011, compared L&L Energy's revenue statements for 2009, 2010, and the first three quarters of 2011 with comparable data from a much larger Chinese competitor and found L&L Energy's claims to be "incredible," "suspicious," and "ridiculous."  Dkt. # 40-2 at 11.  The Glaucus Report can therefore be construed as a corrective disclosure regarding the allegedly false statements, the immediate effect of which was a significant drop in share price.  Having adequately alleged loss causation, the Court will consider the adequacy of plaintiff's falsity and scienter allegations regarding all three allegedly false or misleading revenue statements.

### A. REVENUE STATEMENT IN 2009 10-K

#### 1. Falsity

Plaintiff alleges that defendants grossly overstated L&L Energy's consolidated net revenue in its SEC filings for the fiscal year May 1, 2008, to April 30, 2009.  In support of this allegation, plaintiff alleges that (a) L&L Energy did not have ownership or control of two of its claimed assets, the DaPuAn Mine and the SuTong Mine, such that the inclusion of revenue from those mines in its 2009 10-K was misleading and (b) that L&L Energy's subsidiaries in China reported much lower revenues and income to the PRC State Administration for Industry and

ORDER DENYING DEFENDANTS'
MOTION TO DISMISS                    -5-

Commerce ("SAIC") over a comparable period.[4] Plaintiff has alleged with particularity specific facts supporting his assertion that L&L Energy did not have ownership of or control over the DaPuAn and SuTong Mines. TAC ¶¶ 52-77. Plaintiff alleges that L&L Energy failed to make the payments required under the 2008 agreement to acquire an interest in the DaPuAn and SuTong Mines and that it had no right to include revenue from the two mines in its 2009 10-K. Plaintiff specifically alleges that the 2008 agreement was breached, that the SAIC records show that the mines are currently registered to or controlled by the brother and son of the original owner (who died in a car accident at the end of 2008), that L&L Energy is not the registered owner of the mines under Chinese law, that the registered owner of the SuTong Mine disputes L&L Energy's claims and unequivocally states that L&L Energy never acquired any legal or equitable interest in the mines, and that the 2009 supplemental agreements purporting to give L&L Energy an additional 20% interest in the mines for no additional consideration are forgeries. These allegations are not conclusory and are therefore entitled to a presumption of truth in the context of this motion to dismiss. Reese v. BP Exploration (Alaska) Inc., 643 F.3d 681, 690 (9th Cir. 2011).[5] Although the Court does not find particularly compelling plaintiff's

---

[4] Plaintiff also alleges that L&L Energy overstated its ownership stake in one of its subsidiaries, Kunming Biaoyu Industrial Boiler Co., Ltd. ("KMC"). TAC ¶¶ 80-81. Plaintiff does not, however, tie a misstatement regarding ownership stake to the Form 10-K revenue statements. There are no facts from which one could conclude that it was improper for L&L Energy to consolidate KMC's revenue in its SEC filings.

[5] Defendants' third request for judicial notice (Dkt. # 82) is GRANTED in part. The Court has considered the Glaucus Research Group report when determining the scope of the corrective disclosure. The Court has also considered the existence of publicly-filed documents and other documents, the authenticity of which has not been reasonably challenged.
   The Court has not, however, considered the judicially-noticed documents for the truth of the matters asserted therein. The Court is not prepared to determine factual disputes regarding ownership of mining interests in China or to resolve the various challenges to authenticity that have been raised in the context of this motion to dismiss. To do so would compel its conversion into a motion for summary judgment. The pleading requirements under the PSLRA are exacting, but they do not authorize the Court to resolve disputed issues of fact when evaluating the adequacy of the pleading. As long as

ORDER DENYING DEFENDANTS'
MOTION TO DISMISS                          -6-

1 blithe assumptions that revenue statements made to the SAIC and the SEC must match and that
2 any discrepancy in the numbers shows that the statements made to the SEC were false, plaintiff
3 has alleged particularized facts giving rise to a strong inference that L&L Energy did not own or
4 have the right to control the revenue streams from the DaPuAn and SuTong Mines and
5 overstated its revenue in the 2009 10-K as a result.

### 2. Scienter

Based on the above analysis, the Court will assume that L&L Energy did not, in fact, own or have the right to control the DaPuAn and SuTong Mines and therefore misrepresented its consolidated revenue in the 2009 10-K by at least the amount of revenue attributable to those mines. The question then becomes whether the allegations of the TAC give rise to a strong inference that the misrepresentation was made by one or more defendants knowingly or with deliberate recklessness as to its truth.

Plaintiff relies in large part on a "must have known" theory of scienter: that given their positions in the company and the importance of the business interests at stake, defendants must have known that L&L Energy failed to consummate the purchase of the DaPuAn and SuTong Mines and that they had no right to include revenue from the two mines in their 2009 10-K. Plaintiff's particularized allegations, including allegations of breach and forgery, make it hard to imagine how the inclusion of the mines' revenue in L&L Energy's 2009 10-K could have been an innocent mistake or error on the part of anyone involved in the operations of the

---

plaintiff specifically identifies each statement alleged to have been misleading, the reasons or reasons why the statement is misleading, and if an allegation regarding the statement or omission is made on information and belief, all facts on which the belief is formed (15 U.S.C. § 78u-4(b)(1)), thereby raising a strong inference that the statements were false (15 U.S.C. § 78u-4(b)(2)), the complaint will survive a motion to dismiss. See No. 84 Employer-Teamster Joint Pension Trust Fund v. Am. W. Holding Corp., 320 F.3d 920, 935-36 (9th Cir. 2003).

Plaintiff's "Evidentiary Objections" (Dkt. # 86) are overruled. Pursuant to LCR 7(g), objections to material contained in or attached to the submissions of the opposing party "shall not be presented in a separate motion to strike, but shall instead by included in the responsive brief . . . ."

ORDER DENYING DEFENDANTS'
MOTION TO DISMISS                -7-

company. While there is a possibility that L&L Energy simply misunderstood the validity of its contracts and/or Chinese law, the much stronger inference is that it knew of the defects in its claim of ownership at the time it made the revenue statements in the 2009 10-K. Motive for the alleged misstatements exists in the fact that both L&L Energy and defendant Dickson Lee stood to benefit from inflated revenue statements to the extent that they resulted in higher stock prices. These defendants sold or donated stock during the relevant period in atypical fashion, making significant profit and/or garnering a large tax deduction.

Mr. Lee is the founder, CEO, and Chairman of the Board of L&L Energy. Defendant Jung Mei Wang was L&L Energy's CFO from June 22, 2009, through January 18, 2011. Defendant Ian Robinson is on the Board of Directors and became the company's CFO on June 30, 2011. All three individual defendants signed the 2009 10-K. Merely signing a financial statement does not necessarily give rise to a strong inference that the signer had knowledge of all of the underlying facts, however. Zucco Partners, 552 F.3d at 1003-04. While there are allegations from which one can infer that Mr. Lee was involved in the day-to-day operations of L&L Energy and participated in the business deals related to the contested mines, there is no indication that Mr. Robinson was involved in the operations of the company, that he would have had any reason to suspect the continuing validity of the 2008 agreement and the 2009 supplemental agreements, or that he was familiar with Chinese corporate law. While plaintiff's allegations, considered holistically, raise a strong inference that L&L Energy and Mr. Lee acted knowingly, intentionally, or with such recklessness that it reflects some degree of intentional or conscious misconduct related to the 2009 10-K filing, the same cannot be said for Mr. Robinson.[6]

---

[6] Because Ms. Wang has not appeared or joined in the motion to dismiss, the Court need not consider whether the allegations of scienter are adequate as to her.

ORDER DENYING DEFENDANTS'
MOTION TO DISMISS                    -8-

**B. REVENUE STATEMENTS IN 2010 10-K AND 2011 10-K**

Plaintiff alleges that L&L Energy's revenue statements in its 2010 10-K and 2011 10-K are materially false and misleading in that they again claim ownership of the DaPuAn and SuTong mines and include revenue from those mines in the SEC filings. For the reasons discussed above, plaintiff has alleged with particularity specific facts supporting his assertion that L&L Energy did not have ownership of or control over these mines and that L&L Energy and Mr. Lee knew the revenue statements were false when made. The Court need not determine whether the 2010 and 2011 revenue statements were overstated for additional reasons:[7] plaintiff has met its burden at this preliminary stage of the proceeding.

**C. CONTROL PERSON LIABILITY**

Section 20(a) of the Securities Exchange Act of 1934 imposes secondary liability on persons who "control" persons or entities that have violated the securities laws:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall be liable jointly and severally with and to the same extent as such controlled person to any person to which some controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a). The Ninth Circuit has adopted a definition of "control" that requires "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." Howard, 228 F.3d at 1065 n.9 (quoting 17 C.F.R. § 230.405). "Control" must be determined by evaluating the day-to-day affairs of the corporation as a whole, not the particular

---

[7] Plaintiff alleges that the 2010 and 2011 revenue statements were false because, in addition to not having the right to control the revenue from the DaPuAn and SuTong mines, L&L Energy also failed to perfect its interests in the Ping Yi Coal Mine and the Zone Lin Coal Coking Company and reported much lower earnings in its SAIC filings.

ORDER DENYING DEFENDANTS'
MOTION TO DISMISS                             -9-

transaction at issue in the litigation. Paracor Finance, Inc. v. General Elec. Capital Corp., 96 F.3d 1151, 1162 (9th Cir. 1996); Kaplan v. Rose, 49 F.3d 1363, 1382 (9th Cir. 1994). Assuming control exists, a defendant may be liable even if there is no evidence that he or she was a culpable participant in the violation: all that need be shown is that the controlled person/corporation acted with the requisite scienter. Arthur Children's Trust v. Keim, 994 F.2d 1390, 1398 (9th Cir. 1993). The control person may, however, assert a good faith defense by proving his or her own lack of scienter and a failure to directly or indirectly induce the wrongful acts at issue. Howard, 228 F.3d at 1065.

Plaintiff alleges that the individual defendants had direct and supervisory involvement in the day-to-day operations of L&L Energy and were controlling persons for purposes of § 20(a). Defendants' only argument is that plaintiff's § 20(a) Exchange Act claims against the individual defendants fail because there is no primary violation of § 10(b). In light of the Court's finding that plaintiff may proceed with his § 10(b) claims against defendant L&L Energy, the derivative motion to dismiss the § 20(a) claims against the individual defendants is DENIED.

## CONCLUSION

For all of the foregoing reasons, defendants' motion to dismiss the Third Amended Class Action Complaint is DENIED.

Dated this 2nd day of December, 2013.

*[signature]*
Robert S. Lasnik
United States District Judge